UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMMANUEL MAGANA LARA, | |
| Petitioner, | No. 1:25-CV-13730 |
| v. | Judge Edmond E. Chang |
| DALE J. SCHMIDT, Sheriff of Dodge Detention Center,[1] | |
| Respondent. | |

## ORDER

Emmanuel Magana Lara, a citizen of Mexico, entered the United States without inspection nearly two decades ago. R. 1, Pet. ¶¶ 1, 16, 41. The government arrested Magana Lara "without a warrant based on probable cause" and issued a notice to appear for removal proceedings. Status Report at 1–2. Magana Lara was originally held at Broadview Detention Center and now is detained at Dodge Detention Center in Juneau, Wisconsin, without an opportunity for a bond hearing. *Id.*; Pet. ¶¶ 2, 5. He petitions this Court for a writ of habeas corpus, arguing that his mandatory detention under 8 U.S.C. § 1225(b)(2)(A) is unlawful and that he should be given a bond hearing because his detention instead falls under 8 U.S.C. § 1226(a).[2] Pet. ¶ 5.

The government opposes Magana Lara's request and adopts the brief it submitted in another case in this district. R. 10, Resp. at 2. The government similarly adopted that same brief in two other cases previously before this Court.

---

[1]Because "the default rule is that the proper respondent is the warden of the facility where the [petitioner] is being held," *Gamboa v. Daniels*, 26 F.4th 410, 414 (7th Cir. 2022) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)), the Court substitutes Dale J. Schmidt as the proper respondent under Civil Rule 25(d). *See* R. 8, Status Report at 2.

[2]This Court has subject matter jurisdiction over this case under 28 U.S.C. § 2241, which applies generally to habeas writs. As explained below, no immigration-specific statute removes the petition from the jurisdictional grant.

*See Guartazaca Sumba v. Crowley*, 2025 WL 3126512, at *2 (N.D. Ill. Nov. 9, 2025); *Ruiz Melesio v. Crowley*, No. 1:25-cv-13291, at 1–2 (N.D. Ill. Nov. 17, 2025). For the same reasons discussed in *Guartazaca Sumba* and *Ruiz Melesio* and briefly summarized below, the Court grants Magana Lara's petition in general and issues a conditional writ requiring a bond hearing by a date certain (rather than requiring immediate release).

First, the government again contends that this Court lacks jurisdiction to consider Magana Lara's petition under 8 U.S.C. § 1252(a)(2)(B)(ii), (b)(9), and (g). But none of those jurisdiction-stripping provisions apply here. Magana Lara's challenge to "the statutory framework that permits his detention without bail" is not the kind of discretionary decision for which § 1252(a)(2)(B)(ii) bars judicial review. *Demore v. Kim*, 538 U.S. 510, 517 (2003). And the government's decision to impose mandatory detention is too attenuated from "any action taken or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9), to be barred by that provision either. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (plurality opinion) (holding that government's "expansive interpretation of § 1252(b)(9) would lead to staggering results"); *see also id.* at 355 (Breyer, J., dissenting). Nor does 8 U.S.C. § 1252(g) bar judicial review: the provision reaches only "three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphases in original) (cleaned up).[3] Magana Lara's challenge to his detention is not any of those. *See Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999).

Reaching the merits, the Court concludes that Magana Lara is entitled to a bond hearing because his detention arises under 8 U.S.C. § 1226(a) instead of 8 U.S.C. § 1225(b)(2)(A). For § 1225(b)(2)(A) to apply, Magana Lara must be an "applicant for admission" who is "seeking admission" and "is not clearly and beyond a doubt entitled to be admitted." *See also* R. 10-2, Gov't's Exh. A, Resp. Br. at 14–21. Magana Lara is not "seeking admission" based on that term's plain meaning: he

---

[3]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

The government again does not specify whether it adopts all of the arguments made in its earlier briefing, so for the sake of completeness, the Court refers to its earlier discussion of why failure to exhaust, if raised as an affirmative defense by the government, would fail. *See Guartazaca Sumba*, 2025 WL 3126512, at *3 n.8.

entered the country nearly two decades ago and thus does not remain in a state of seeking or requesting admission *into* the country. That is why the Supreme Court has noted that § 1225(b) "applies primarily to aliens seeking *entry* into the United States," whereas § 1226 applies to "aliens *already in the country*." *Jennings*, 583 U.S. at 289, 297 (emphases added).

The government's reading also violates the canon against surplusage in two ways. First, the government's interpretation assigns the same meaning to the distinct terms "an alien seeking admission" and "applicant for admission." Gov't's Exh. A, Resp. Br. at 19. But the interpretive goal to give every clause or word in a statute some operative meaning "is strongest when an interpretation would render superfluous another part of the *same* statutory scheme," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) (emphasis added), and here the terms are mere words apart within the same subparagraph. Second, the government's position would render surplusage 8 U.S.C. § 1226(c)(1)(E), which imposes mandatory detention for some aliens, including those who have unlawfully entered the country *and* were accused or convicted of certain crimes. By implication, Magana Lara, who is not claimed to have committed any such crimes, would be deemed to be detained (before having a bond hearing) under § 1226(a). And again, the government has not revised its briefing to address this issue. *See Guartazaca Sumba*, 2025 WL 3126512, at *4.

Against all of this, the government cites a handful of cases (against dozens) that have decided otherwise and denied habeas relief. Resp. at 3 (citing *Mejia Olalde v. Noem*, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025); *Silva Oliveira v. Patterson*, 2025 WL 3095972 (W.D. La. Nov. 4, 2025); *Barrios Sandoval v. Acuna*, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); *Garibay-Robledo v. Noem*, No. 1:25-cv-00177 (N.D. Tex. Oct. 24, 2025); *Vargas Lopez v. Trump*, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025)). *Mejia Olalde* is representative of those decisions, and the Court has explained its respectful disagreement. *See Ruiz Melesio*, No. 1:25-cv-13291, R. 9 at 3–4. For convenience's sake, the Court repeats that analysis here.

Confronted with the surplusage issue, *Mejia Olalde* considered Congress's use of "applicant for admission" and "seeking admission" as variations on a synonymous term. 2025 WL 3131942, at *3. But as that decision acknowledged elsewhere, the plain text of a related provision, § 1225(a)(3)—"applicants for admission *or otherwise seeking admission*"—demonstrates that the terms are not *synonyms* because "there are other ways to seek admission," *Mejia Olalde*, 2025 WL 3131942, at *3; *see also*

*Marx*, 568 U.S. at 386 (noting that canon of surplusage is strongest when interpreting terms in the "same statutory scheme"). And as explained earlier, the plain, distinct meaning of "seeking admission" does not describe Magana Lara, who entered the country almost two decades ago and thus no longer seeks admission. *See also Guartazaca Sumba*, 2025 WL 3126512, at *4. *Mejia Olalde* also considered the surplusage concern of § 1226(c)(1)(E) to be, in part, "mere[] overlap[]" with § 1225(b)(2)(A) because § 1226(c)(1)(E) provides time limits for the Attorney General. 2025 WL 3131942, at *4. But that would be more than overlap: if § 1225 "does not specify a timeline" and *mandates* detention for all unlawful entrants, then there is no need to specify a subset of times at which detention is required. The government's interpretation is also undermined by *Mejia Olalde*'s acknowledgment, 2025 WL 3131942, at *5, that the government has long interpreted these statutes the way Magana Lara asks and thus also did so when recently amending § 1226(c)(1)(E). *See Monsalvo v. Bondi*, 604 U.S. 712, 725 (2025) (noting presumption that "new provision should be understood to work in harmony with what has come before," including "longstanding administrative construction").

*Mejia Olalde* also leans on the Supreme Court's observation that § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." 2025 WL 3131942, at *3–4 (citing *Jennings*, 583 U.S. at 287).[4] But *Mejia Olalde*'s citations to § 1225(b)(1)(A), the provision permitting expedited removal, highlight the relationship between (b)(1) and (b)(2): section 1225(b)(1)(A)(i) applies to aliens "arriving in the United States" who are "inadmissible under section 1182(a)(6)(C) or 1182(a)(7)," and § 1225(b)(1)(A)(iii) applies to "any or all" aliens who have not been in the country for at least two years "as designated by the Attorney General." Section 1225(b)(2)'s catchall effect thus does *not* catch literally all other unadmitted aliens; rather, it catches, for example, aliens arriving but inadmissible under *other* provisions not cited in § 1225(b)(1)(A)(i) and aliens present for fewer than two years who were *not* designated by the Attorney General for expedited removal under § 1225(b)(1)(A)(iii).

---

[4]The Supreme Court states that § 1225(b)(2) applies to all other "applicants for admission," and this Court regards that usage as a term of art, encompassing all of the statutory requirements of § 1225(b)(2)(A). That is, applicants for admission who are seeking admission and who are not beyond a doubt entitled to admission. Not putting too much weight on only "applicant for admission" squares with the Supreme Court's distinction within the same opinion that § 1225 applies to aliens "seeking entry" and that § 1226 applies to aliens "already in the country." *Jennings*, 583 U.S. at 289, 297.

4

The Court resolves Magana Lara's statutory argument in his favor, so the Court does not reach the merits of his constitutional claim premised on due process. *Camreta v. Greene*, 563 U.S. 692, 705 (2011).

The Court grants Magana Lara's petition, R. 1. Because the Court holds that Magana Lara's detention under 8 U.S.C. § 1225(b)(2)(A) violates the Immigration and Nationality Act, Magana Lara is entitled to a bond hearing under 8 U.S.C. § 1226(a). *See* 8 C.F.R. §§ 1003.19, 1236.1(c)(8), (d). The Court thus issues a conditional writ of habeas corpus, directing the Respondent, on or before November 28, 2025, either to afford Magana Lara a bond hearing that complies with federal laws and regulations or to release him under reasonable conditions of supervision. The Court also directs the parties to file a status report on or before December 1, 2025, that addresses Magana Lara's release status, whether he received a bond hearing, and the result of that bond hearing.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 20, 2025